276 Neb. 359
SHAUN O. PARKER, D.D.S., Appellant,
v.
STATE OF NEBRASKA EX REL. JON BRUNING, ATTORNEY GENERAL, Appellee.
No. S-07-588.
Supreme Court of Nebraska.
Filed August 8, 2008.
Jerry W. Katskee, of Katskee, Henatsch & Suing, for appellant.
Jon Bruning, Attorney General, and Lisa K. Anderson for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

I. SUMMARY
Shaun O. Parker, D.D.S., appeals the State's disciplinary action. In November 2006, the director of the Department of Health and Human Services Regulation and Licensure (the Department) revoked Parker's license to practice dentistry. Parker sought review by the district court. The court affirmed the order revoking his license.
On appeal, Parker argues that the State denied him procedural due process during the disciplinary procedures. He also contends that the revocation of his license was an inappropriate sanction for his alleged offense. Because of Parker's procedural defaults, we do not address his due process claims. We, however, conclude that revocation was an appropriate sanction. We affirm.

II. BACKGROUND

1. PARKER'S PRIOR DISCIPLINARY ACTION
In January 2001, the State petitioned for disciplinary action against Parker's license to practice dentistry. The State's petition alleged in part that from September 1998 through March 2000, Parker obtained prescription drugs for his personal use by fraudulent prescriptions. In a settlement agreement with the State, Parker admitted the allegations in the State's petition. The agreement noted that in November 2000, Parker completed an inpatient chemical dependency treatment program at an outstate recovery facility. The agreement provided that Parker's dental license would be placed on probation for 5 years.

2. PARKER'S CURRENT DISCIPLINARY ACTION
In June 2006, Parker faced another disciplinary action against his dental license. That action is the subject of the current appeal. The action stemmed from two separate factual allegations that Parker (1) allowed his dental partner to use a rubber stamp bearing Parker's signature to prescribe controlled substances for multiple patients and (2) failed to maintain a controlled substance log for Triazolam kept and used in the office.

(a) The Department's Investigation and the Board of Dentistry's Subsequent Recommendation
In January 2006, a Department investigator, Jeff Newman, received information from a confidential informant. The informant told Newman that Parker's dental partner, Carl Braun, D.D.S.who was not authorized to prescribe controlled substanceswas using a rubber stamp bearing Parker's signature to prescribe drugs for his patients. The Department began an investigation involving Parker. Upon completing the investigation, Newman drafted a written report of the investigation and his findings. He submitted the report to the Board of Dentistry (the Board) for their review and recommendations. The Board recommended that the Department revoke Parker's dental license.

(b) The State's Petition for Disciplinary Action
Following the Board's recommendation, the Attorney General petitioned for disciplinary action against Parker's license. The State alleged that Parker's act of allowing Braun to use the rubber stamp to issue prescriptions justified discipline under Neb. Rev. Stat. § 71-147(8) (Reissue 2003). That section provides that the State may discipline a professional licensee for Iplermitting, aiding, or abetting the practice of a profession or the performance of activities requiring a license, certificate, or registration by a person not licensed, certified, or registered to do so." The State also alleged that the conduct was a ground for discipline under § 71-147(2) as dishonorable conduct and § 71-147(10) as unprofessional conduct. The State further alleged that Parker's failure to maintain a controlled substance log for Triazolam was a ground for discipline under § 71-147(10) and (17).
After a hearing before a hearing officer, the director issued findings of fact and conclusions of law. The director concluded that Parker's act of allowing Braun to issue prescriptions without a Drug Enforcement Administration (DEA) permit was a ground for discipline under § 71-147(8). The director further determined that Parker's conduct in allowing Braun to use the rubber stamp and Parker's failure to maintain a controlled substance log for Triazolam constituted unprofessional conduct and were therefore grounds for discipline. The director revoked Parker's dental license.

(c) The District Court's Review of the Director's Decision
Parker petitioned the district court for review of the director's decision. The district court's subsequent order explained that Parker did not take issue with the director's factual conclusions. Parker instead argued the disciplinary process was unfair and thus it violated his due process rights. The court implicitly concluded that the State had not violated Parker's due process rights. After a de novo review of the record, the court found clear and convincing evidence that Parker engaged in unprofessional conduct. The court concluded that the revocation of Parker's dental license was appropriate under the circumstances. Parker now appeals the district court's decision.

3. FACTS RELEVANT TO THE SIGNATURE STAMP

(a) Braun's Probationary License
The State alleged that between January 2005 and January 2006, Parker allowed Braun to use a rubber stamp bearing Parker's signature to issue prescriptions for controlled substances. During this period, Braun, like Parker, was practicing dentistry under a probationary license. One probationary condition required Braun to practice with another dentist holding a Nebraska license. Another condition provided that until he completed 2 years of probation, Braun was not to prescribe controlled substances. Braun's probation began in 2004.
Parker was Braun's supervisor when Braun began working with Parker in August 2004. At that time, Parker signed a form for the Department stating that he had reviewed the Department's letter offering Braun a probationary license. That letter explained that for the first 2 years of his probation, Braun was not to prescribe controlled substances. Despite the requirement that Braun not prescribe controlled substances, Parker allowed Braun to issue prescriptions by using a rubber stamp with Parker's signature.

(b) Use of the Signature Stamp
After receiving information from the confidential informant about the signature stamp, Newman and a DEA investigator collected prescriptions bearing Parker's name from several pharmacies in Omaha. Several prescriptions had a rubber stamp signature. The stamped prescriptions were for the following controlled substances: (Schedule III) Vicodin, Lorcet 10, and Tylenol #3, and (Schedule IV) Darvocet N100 and Triazolam .25.[1]
After Newman and the DEA investigator collected the prescriptions, they made an unannounced visit to Parker's dental office to talk with Parker and Braun. Newman later testified that Parker was cooperative during the visit.
Parker admitted to Newman that the rubber stamp existed. He told Newman that he and Braun created the stamp to alleviate any inconvenience for Braun's patients who needed controlled substances. Because Braun was not authorized to write prescriptions, Parker had to sign the prescriptions for Braun's patients. Parker explained at the hearing that there were times Braun needed Parker's signature when Parker was in the middle of a procedure. Parker stated that having to "de-glove" in the middle of a procedure and to "re-glove" after signing the prescription could be time consuming. The alternative was to have Braun's patients wait until Parker had finished his procedure. So, according to Parker, they used the rubber stamp with Parker's signature "to facilitate things," "just to move things along so patients wouldn't have to wait." Parker explained that the prescriptions were computer generated with his DEA number and that Braun would then use the rubber stamp to apply Parker's signature to the prescription.
Parker told Newman that he initially provided direct supervision of all prescriptions requested by Braun. But once he became comfortable with Braun's prescribing habits, he no longer made contemporaneous reviews of every prescription Braun issued with the stamped signature. Parker later testified that he reviewed each prescription when it was written or, if not then, within 24 hours of the patient's visit. According to Newman, Parker acknowledged that Braun used the rubber stamp on occasions when Parker was out of the office.
Parker testified that he regularly used the stamp himself. He also testified he did not know until shortly before his meeting with Newman that using the stamp could be an issue. He stated he was not aware of the problem until a pharmacy notified his office that investigators were pulling the stamped prescriptions. According to Parker, he and Braun immediately stopped using the rubber stamp upon learning of the problem.

4. FACTS RELATING TO PARKER'S FAILURE TO MAINTAIN A CONTROLLED SUBSTANCE LOG FOR TRIAZOLAM
The events leading to Parker's initial discipline in 2001 would have justified the revocation of his DEA registration as a practitioner authorized to handle Schedule II through V controlled substances.[2] But the DEA agreed not to revoke his DEA registration if he complied with the terms of a "Memorandum of Understanding." Under those terms, Parker agreed that until January 23, 2006, he would maintain a log of all controlled substances he prescribed. The State alleged that Parker had admitted his office did not maintain a controlled substance log for Triazolam (a Schedule IV controlled substance allegedly used in the office). According to the State, Parker's failure to maintain the log was a ground for discipline.
Triazolam is a prescription drug that patients brought to their appointments for possible sedation during their procedures. Newman testified he had information that if any tablets remained after the patient's procedure, the office would use those tablets for other patients. According to Newman, Parker told him this procedure had not been in practice for some time, but Parker admitted that four or five times in the past, he had used the extra Triazolam on his patients. Newman's investigation report explained that Parker stated neither he nor the clinic maintained a controlled substance log for the Triazolam.
At the hearing, Parker disputed Newman's testimony about the Triazolam. Parker testified that to his knowledge, the office did not keep scheduled substances. Parker acknowledged that in the past, other providers in the office may have kept Triazolam, but once he became the owner of the practice, he requested that the Triazolam not be retained in the office. Parker denied Newman's allegation that Parker had used the extra Triazolam four or five times.
An employee testifying for Parker stated that Parker did not authorize the retention of medications in the office. The employee testified that if any medication remained after the patient's procedure, the medication was disposed of in the toilet or sink.

III. ASSIGNMENTS OF ERROR
Parker assigns, restated and consolidated, that the district court erred in (1) deciding the disciplinary process did not deny him procedural due process, (2) disregarding the hearing officer's failure to address Parker's constitutional arguments, (3) determining that revoking his license was an appropriate sanction, and (4) finding clear and convincing evidence that Parker engaged in unprofessional conduct.

IV. STANDARD OF REVIEW
A judgment or final order rendered by a district court in a judicial review under the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record.[3] When reviewing such an order, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]

V. ANALYSIS

1. WE DECLINE TO REACH THE MERITS OF PARKER'S DUE PROCESS CLAIMS
Procedural due process limits the ability of the government to deprive people of interests that constitute "liberty" or "property" interests within the meaning of the Due Process Clause.[5] Procedural due process requires that the government provide parties deprived of such interests adequate notice and an opportunity for a hearing.[6] In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board.[7]
Although the State gave Parker notice and an opportunity to be heard before the hearing officer, he contends that the State denied him procedural due process during the disciplinary proceedings. Specifically, Parker sets out three grounds for his due process claim: (1) the Attorney General was allegedly involved in the "closed session investigation"; (2) the Attorney General allegedly appeared before the Department's director following the hearing on the State's petition; and (3) the State used a confidential informant. As discussed below, we decline to reach the merits of Parker's due process arguments.

(a) The Record Fails to Show That the Attorney General Was Present at the Investigation or Appeared Before the Director
When the Department receives a complaint that a licensee has violated the Uniform Licensing Law, the Department may investigate.[8] Following the Department's investigation, the professional board may review the investigational file in making recommendations to the Attorney General regarding the violations the board has identified and any sanctions the board believes would be appropriate.[9] The board's recommendations are part of the completed investigational report that the Department submits to the Attorney General.[10] After the Attorney General receives the Department's report, the Attorney General determines which, if any, statutes, rules, or regulations the licensee has violated and the appropriate legal action to take.[11] The Attorney General may elect to file a petition for discipline, which occurred here.[12]
Once the State files a petition, the director sets a time and place for a hearing on the petition and designates a hearing officer to conduct the hearing.[13] Here, both Parker and the State appeared at the hearing and presented witnesses. The hearing officer also received 16 exhibits. Following the hearing, the director entered findings of fact, conclusions of law, and an order revoking Parker's license to practice dentistry.
In his first due process argument, Parker claims that the Attorney General was present at the "closed session investigation" before the State filed its petition and that neither Parker nor his counsel were present. Parker argues that he "was not present at the investigation to hear, much less rebut, the allegations and evidence against him."[14] He claims the Attorney General was present and able to submit evidence against him and to persuade the Board to recommend certain sanctions. Parker further contends that the State denied him due process after the hearing because it would not allow him to appear when the Attorney General allegedly appeared before the director acting as the legal advisor to the Board.
The State contends that Parker has inaccurately described the discipline process. According to the State, the Attorney General did not submit evidence against Parker to the Board or otherwise attempt to persuade the Board to recommend desired sanctions. Moreover, the State disputes Parker's claims that the Attorney General personally appeared before the director as prosecutor and legal advisor to the Board.
Although Parker asserts that the Attorney General was present during the investigation before the hearing and appeared before the director after the hearing, he makes these assertions without any reference to the record. We have not found any evidence that the Attorney General was present during the investigation. Nor does the record reflect that the Attorney General appeared before the director concerning Parker's disciplinary action.
[6] Assuming but not deciding that his argument has merit, we decline to address the issue. It was incumbent upon Parker to present a record supporting the errors assigned.[15] Absent such a record, an appellate court will affirm the lower court's decision regarding those errors.[16] Because we cannot determine from the record whether the Attorney General was present during the investigation or appeared before the director, we decline to address the merits of Parker's claims.

(b) The Record Fails to Show That Parker Attempted to Confront or Examine the State's Confidential Informant
Parker also contends that the State denied him procedural due process because it denied him the opportunity to confront and cross-examine the confidential informant. In his brief, Parker frames the issue as "[w]hether [he] was denied procedural due process by the [director] in the crucial initial stages of the proceedings against him, to wit: (a) the investigation of the complaint derived from [a] confidential informant. . . ." Parker argues that he was unable to confront or cross-examine the confidential informant. The State did not call the informant to testify at the hearing. The record, however, fails to show that Parker made any attempts or requests to confront or examine the informant or that the director or hearing officer denied any such attempts or requests. Simply put, the record does not establish that the director or hearing officer denied Parker the opportunity to examine the informant. So, even if we were to agree that denying a licensee the opportunity to examine a confidential informant could be a possible due process violation, here, the record lacks any evidence that Parker was denied such an opportunity. As stated, an appellant must present a record that supports the errors assigned.[17] We decline to address the merits of Parker's argument.

2. PARKER HAS FAILED TO COMPLY WITH PROCEDURAL RULES FOR CHALLENGING THE CONSTITUTIONALITY OF STATUTES
[7] Parker also asserts in his brief that "the procedures established by the statutory administrative scheme deprived him of due process on this confidential informant based investigation."[18] Parker does not identify the specific statutes to which he is referring. But to the extent he is arguing that specific statutes are unconstitutional, we do not reach this argument. Neb. Ct. R. App. § 2-109(E) requires that a party challenging a statute's constitutionality file and serve notice with the Supreme Court Clerk at the time of filing the party's brief.[19] We have repeatedly held that strict compliance with § 2-109(E) is required for the court to address a constitutional claim.[20] A review of the record shows that Parker failed to file with the clerk a notice of a constitutional question.
Parker also argues that another statute, Neb. Rev. Stat. § 84-917(6)(b) (Cum. Supp. 2006), is unconstitutional. Section 84-917(6)(b) of the Administrative Procedure Act provides that for petitions for review filed in the district court on or after July 1, 1989, "the court may affirm, reverse, or modify the decision of the agency or remand the case for further proceedings." Parker argues that the statute fails to provide a clear standard for the district court regarding the grounds on which it may rely to remand the case. According to Parker, his due process arguments could not be addressed "in any meaningful way" under § 84-917.[21] Parker therefore argues that the statute is "unconstitutional on its face, as it works to deny the ability to raise and have considered violations of constitutional provisions."[22] Again, however, Parker failed to file with the Supreme Court Clerk a notice of a constitutional question as required under § 2-109(E).
Thus, we do not address Parker's claims that the statutes are unconstitutional.

3. REVOCATION OF PARKER'S LICENSE TO PRACTICE DENTISTRY WAS AN APPROPRIATE SANCTION
Parker also contends that the revocation of his license to practice dentistry was an inappropriate sanction. He argues that he was unaware that the use of a rubber signature stamp was prohibited. He claims that he stopped using it immediately upon learning that it was prohibited, that no patients were directly harmed by his conduct, and that he cooperated with the Department's investigator.
[8] In Poor v. State,[23] we identified criteria to consider in assessing the severity of a disciplinary sanction imposed upon a health care professional:
"(1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the [profession] as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of [the profession]."
The director's revocation of Parker's dental license was not the first disciplinary action taken against Parker. In January 2001, the director placed Parker's license on probation for 5 years after he admitted that he obtained controlled substances for personal use by fraudulent prescriptions and that he violated the Uniform Controlled Substances Act.
While Parker's license was still on probation for this prior misconduct, he agreed to help monitor Braun's compliance with Braun's own probationary terms. Parker knew upon hiring Braun that Braun was prohibited from prescribing controlled substances for the first 2 years of his probation.
Despite this knowledge, Parker allowed Braun to issue prescriptions using Parker's DEA number and a rubber stamp bearing Parker's signature. Parker admitted that although he initially provided direct supervision of all prescriptions Braun issued with the signature stamp, he eventually ceased making contemporaneous reviews of every prescription Braun issued.
Parker argues that he was unaware that use of the rubber stamp was prohibited. But he misses the point. He knew that Braun was not authorized to prescribe controlled substances and agreed to monitor Braun, yet he allowed Braun to issue prescriptions using the stamp without contemporaneously reviewing the prescriptions. In effect, he enabled and allowed Braun to prescribe controlled substances when Braun was not authorized to do so. Parker's conduct trivialized the terms of Braun's probation.
We find Parker's conduct particularly troublesome given that his own license was on probation at the time. Having been previously disciplined for violations of the Uniform Controlled Substances Act, Parker, an experienced practitioner, should have understood the magnitude of responsibility the Department demands of health care professionals who prescribe controlled substances.
Parker urges us to consider that he cooperated with the investigator and that he and Braun stopped using the signature stamp upon learning that its use was prohibited. The Department's regulations contain a nonexclusive list of factors that the Department may consider to determine an appropriate sanction.[24] We recognize that included as mitigating factors are "Iclontriteness and willingness to cooperate"[25] and "Iclorrective efforts . . . related to the conduct charged, such as changes in practices. . . ."[26] But included as an aggravating factor is "[p]rior disciplinary action, or misconduct while under discipline . . ."[27] Because Parker was on probation for prior misconduct involving controlled substances when the current offense occurred, the presence of the two mitigating factors is less than compelling. We conclude that the revocation of Parker's license was an appropriate sanction.

4. WE Do NOT REACH PARKER'S FOURTH ASSIGNMENT OF ERROR
[9] Although Parker assigns as error the district court's finding of clear and convincing evidence that he engaged in unprofessional conduct, he makes no argument to support this assignment. For an appellate court to consider an alleged error, the error must be both specifically assigned and specifically argued in the brief of the party assigning the error.[28] Therefore, we do not consider his fourth assignment of error.
We have considered Parker's remaining arguments and conclude that they are without merit.

VI. CONCLUSION
We decline to reach the merits of Parker's due process claims, his challenges to the constitutionality of statutes, and his claim that the district court erred in finding clear and convincing evidence that he engaged in unprofessional conduct. We conclude that the revocation of Parker's license to practice dentistry was an appropriate sanction under the circumstances. We affirm the district court's order affirming the revocation of Parker's dental license.
AFFIRMED.
HEAVICAN, C.J., not participating.
NOTES
[1] See Neb. Rev. Stat. § 28-405 (Cum. Supp. 2004).
[2] See id.
[3] Zwygart v. State, 273 Neb. 406, 730 N.W.2d 103 (2007).
[4] Id.
[5] Marshall v. Witnes, 261 Neb. 846, 626 N.W.2d 229 (2001).
[6] See id.
[7] Id.
[8] Neb. Rev. Stat. § 71-168.01(1) (Reissue 2003).
[9] § 71-168.01(5).
[10] Id.
[11] Neb. Rev. Stat. § 71-171.01 (Reissue 2003).
[12] Id.
[13] Neb. Rev. Stat. §§ 71-153 and 71-155 (Reissue 2003); 184 Neb. Admin. Code, ch. 1, § 008.01 (1994).
[14] Brief for appellant at 12.
[15] See In re Interest of Kochner, 266 Neb. 114, 662 N.W.2d 195 (2003).
[16] See id.
[17] See In re Interest of Kochner, supra note 15.
[18] Brief for appellant at 17.
[19] See Ptak v. Swanson, 271 Neb. 57, 709 N.W.2d 337 (2006).
[20] See id.
[21] Brief for appellant at 20.
[22] Id. at 22.
[23] Poor v. State, 266 Neb. 183, 195, 663 N.W.2d 109, 118-19 (2003).
[24] See 184 Neb. Admin. Code, ch. 1, § 013.03 (1994).
[25] Id., § 013.03B5.
[26] Id., § 013.03B3.
[27] Id., § 013.03A5.
[28] Bellino v. McGrath North, 274 Neb. 130, 738 N.W.2d 434 (2007).