Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/07/2016 09:07 AM CDT

State of Nebraska, appellee, v.
Jason J. Boche, appellant.
___ N.W.2d ___

Filed October 7, 2016.    No. S-15-677.

1. **Judgments: Appeal and Error.** When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.
2. **Constitutional Law: Statutes.** The constitutionality of a statute presents a question of law.
3. **Constitutional Law: Rules of the Supreme Court: Statutes.** Strict compliance with Neb. Ct. R. App. P. § 2-109(E) (rev. 2014) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized.
4. **Pleas: Waiver.** Once a plea of guilty has been accepted, the defendant waives every defense to the charge. All defects not raised in a motion to quash are taken as waived by a defendant pleading the general issue.
5. ____: ____. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional.
6. **Constitutional Law: Appeal and Error.** A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal.
7. **Constitutional Law: Convicted Sex Offender: Sentences.** The registration requirements of Nebraska's Sex Offender Registration Act do not impose criminal punishment, and thus cannot amount to cruel and unusual punishment.
8. **Convicted Sex Offender: Sentences: Probation and Parole.** Lifetime community supervision under Neb. Rev. Stat. § 83-174.03 (Reissue 2014) is akin to parole and thus is punishment.
9. **Constitutional Law: Sentences.** Under *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the first step

in a categorical cruel and unusual punishment analysis is examination of the national consensus on the issue.

10. ____: ____. The second step in a cruel and unusual punishment analysis requires the court to exercise its own independent judgment as to whether the punishment in question violates the Eighth Amendment. The judicial exercise of independent judgment requires consideration of (1) the culpability of the offenders at issue in light of their crimes and characteristics, (2) the severity of the punishment in question, and (3) whether the challenged sentencing practice serves legitimate penological goals.

11. **Constitutional Law: Convicted Sex Offender: Minors: Sentences.** Lifetime community supervision is not cruel and unusual punishment merely because the aggravated offense was committed while a juvenile.

Appeal from the District Court for Madison County: Mark A. Johnson, Judge. Affirmed.

Barbara J. Masilko and Chelsey R. Hartner, Deputy Madison County Public Defenders, for appellant.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ., and Moore and Bishop, Judges.

Stacy, J.

Jason J. Boche was convicted of first degree sexual assault committed while he was a juvenile. He was sentenced to 1 year's imprisonment and was found to be subject to both lifetime sex offender registration and lifetime community supervision. Boche contends the lifetime requirements are cruel and unusual punishments because he was a juvenile when the offense was committed. We conclude neither lifetime requirement amounts to cruel and unusual punishment, and affirm the conviction and sentence.

## I. FACTS

On December 1, 2014, Boche was charged with first degree sexual assault in the district court for Madison County. The

information alleged he subjected another to sexual penetration without consent on or about January 1, 2005, through December 31, 2008. Boche was a juvenile at the time the alleged acts occurred, but had reached the age of majority by the time charges were filed in district court.

Boche eventually entered into a plea agreement. In exchange for his plea of no contest, the State agreed to recommend a sentence of not more than 1 year's imprisonment and agreed to file no additional charges. Prior to accepting the plea, the court informed Boche that if a jury found the offense was aggravated, he would be subject to mandatory lifetime registration requirements under the Sex Offender Registration Act (SORA) and to mandatory lifetime community supervision by the Office of Parole Administration.[1]

As a factual basis for the plea, the State recited that the victim was born in June 1997, that Boche had penile-vaginal intercourse with the victim on several occasions, and that during a taped interview, Boche admitted he and the victim engaged in oral sex. The sexual acts occurred while the victim was between the ages of 6 and 11 and Boche was between the ages of 11 and 16. Boche waived his right to a jury trial on the aggravation issue, and after an evidentiary hearing, the court concluded it was an aggravated offense under § 29-4001.01, because the victim was under the age of 13. Section 29-4001.01 provides:

> (1) Aggravated offense means any registrable offense under section 29-4003 which involves the penetration of, direct genital touching of, oral to anal contact with, or oral to genital contact with (a) a victim age thirteen years or older without the consent of the victim, (b) a victim under the age of thirteen years, or (c) a victim who the sex offender knew or should have known was mentally or physically incapable of resisting or appraising the nature of his or her conduct.

---

[1] See Neb. Rev. Stat. §§ 29-4001.01 (Supp. 2015), 29-4003 and 29-4005(1)(b) (Cum. Supp. 2014), and 83-174.03 (Reissue 2014).

Boche argued that because he was a juvenile at the time the acts occurred, finding him to be an aggravated offender and thus subject to lifetime registration under § 29-4005(1)(b) of SORA and to lifetime community supervision under § 83-174.03 would subject him to cruel and unusual punishment, in violation of the Eighth Amendment to the U.S. Constitution. The district court found § 29-4001.01 made no distinction based on the age of the offender and sentenced Boche to 1 year's imprisonment, ordered him to register under SORA for life, and found he was subject to lifetime community supervision. Boche filed this timely appeal.

## II. ASSIGNMENTS OF ERROR

Boche assigns, restated, that the trial court erred in (1) imposing cruel and unusual punishment on him by sentencing him to lifetime sex offender registration and lifetime community supervision when he committed the aggravated offense as a juvenile and (2) violating the Ex Post Facto Clause when it sentenced him to lifetime community supervision.

## III. STANDARD OF REVIEW

[1,2] When dispositive issues on appeal present questions of law, an appellate court has an obligation to reach an independent conclusion irrespective of the decision of the court below.[2] The constitutionality of a statute presents a question of law.[3]

## IV. ANALYSIS

### 1. ISSUES PROPERLY BEFORE US

#### (a) Applicability of § 2-109(E)

The State contends that neither of Boche's two assignments of error are properly before us because Boche did not file a notice of constitutional question pursuant to Neb. Ct. R. App. P. § 2-109(E) (rev. 2014), which states:

---

[2] *State v. Dye*, 291 Neb. 989, 870 N.W.2d 628 (2015); *State v. Watt*, 285 Neb. 647, 832 N.W.2d 459 (2013).

[3] *Adams v. State*, 293 Neb. 612, 879 N.W.2d 18 (2016).

A party presenting a case involving the federal or state constitutionality of a statute must file and serve notice thereof with the Supreme Court Clerk by a separate written notice or by notice in a Petition to Bypass at the time of filing of such party's brief. If the Attorney General is not already a party to an action where the constitutionality of the statute is in issue, a copy of the brief assigning unconstitutionality must be served on the Attorney General within 5 days of the filing of the brief with the Supreme Court Clerk; proof of such service shall be filed with the Supreme Court Clerk.

The § 2-109(E) requirement is driven by the mandates of article V, § 2, of the Nebraska Constitution, which provides in pertinent part:

A majority of the members [of the Supreme Court] sitting shall have authority to pronounce a decision except in cases involving the constitutionality of an act of the Legislature. No legislative act shall be held unconstitutional except by the concurrence of five judges. . . . The judges of the Supreme Court, sitting without division, shall hear and determine all cases involving the constitutionality of a statute . . . .

The § 2-109(E) notice requirement was implemented because it "assists the clerk and this court in ensuring that an appeal involving the constitutionality of a statute is heard by the full court."[4] The rule also ensures the Attorney General is promptly advised of a constitutional challenge to a statute so the appeal may be staffed and handled accordingly.

Here, Boche is not arguing that §§ 29-4001.01, 29-4003, 29-4005(1)(b), and 83-174.03 are unconstitutional on their face and must be judicially invalidated. Instead, he contends the registration and community supervision provisions of those statutes, although valid and enforceable on their face, cannot constitutionally be applied to him. The initial question

---

[4] *State v. Johnson*, 269 Neb. 507, 513, 695 N.W.2d 165, 170-71 (2005).

before us is whether a § 2-109(E) notice is required in such a situation.

In *Zawaideh v. Nebraska Dept. of Health & Human Services*,[5] we implied that a § 2-109(E) notice was not required unless a litigant was presenting a facial challenge to the constitutionality of a statute:

> Although [appellant] *is presenting a facial challenge* to the constitutionality of a statute, he did not file a notice of constitutional question pursuant to Neb. Ct. R. App. P. § 2-109(E) (rev. 2008), which requires that a party challenging a statute's constitutionality file and serve notice with the Supreme Court Clerk at the time of filing the party's brief. And we have repeatedly held that strict compliance with § 2-109(E) is required for the court to address a constitutional claim. Therefore, we do not address [appellant's] claims regarding the constitutionality of various statutes. *However, we do consider his claims that the application of those statutes in this instance violated his right to due process*.

Our language in *Zawaideh* has caused confusion, and may explain why no § 2-109(E) notice was filed in the present appeal.

The distinction drawn in *Zawaideh* between facial and as-applied challenges can be important when it comes to determining whether a constitutional issue has been preserved for appellate review. This is because challenges to the constitutionality of a criminal statute as applied to a defendant are preserved by a plea of not guilty,[6] but to bring a constitutional challenge to the facial validity of a statute, the proper procedure is to file a motion to quash, and all defects not raised in

---

[5] *Zawaideh v. Nebraska Dept. of Health & Human Servs.*, 280 Neb. 997, 1004-05, 792 N.W.2d 484, 492 (2011) (emphasis supplied). See, also, *Parker v. State ex rel. Bruning*, 276 Neb. 359, 753 N.W.2d 843 (2008) (addressing due process claim but declining to address whether specific statutes were unconstitutional in absence of § 2-109(E) filing).

[6] *State v. Perina*, 282 Neb. 463, 804 N.W.2d 164 (2011).

a motion to quash are taken as waived by a defendant pleading the general issue.[7]

But the distinction between facial and as-applied constitutional challenges is immaterial when it comes to the § 2-109(E) notice. Neither the constitutional provision which prompted our court rule, nor the court rule itself, make any distinction between facial and as-applied constitutional challenges. Nor, in terms of the underpinnings of the court rule, is there any rationale for distinguishing between facial and as-applied challenges; all challenges to the constitutionality of a statute should be heard by a full court, and a supermajority is required to declare any statute unconstitutional, without regard to whether the challenge is facial or as-applied.

[3] In prior cases, we have insisted on "strict compliance" with § 2-109(E).[8] The importance of a constitutional challenge demands our full attention and adherence to constitutional mandates. We take this opportunity to clarify that strict compliance with § 2-109(E) is necessary whenever a litigant challenges the constitutionality of a statute, regardless of how that constitutional challenge may be characterized. To the extent we suggested otherwise in *Zawaideh*, we expressly disapprove of such language. But because the absence of a § 2-109(E) notice in this appeal may have been prompted by our language in *Zawaideh,* we conclude it is appropriate to consider the as-applied constitutional challenges Boche presents.

### (b) Entry of Plea as Waiver of Constitutional Claim

[4,5] Once a plea of guilty has been accepted, the defendant waives every defense to the charge. All defects not raised in a motion to quash are taken as waived by a defendant pleading

---

[7] *State v. Harris*, 284 Neb. 214, 817 N.W.2d 258 (2012).

[8] *Cain v. Custer Cty. Bd. of Equal.*, 291 Neb. 730, 868 N.W.2d 334 (2015); *Parker v. State ex rel. Bruning, supra* note 5; *Ptak v. Swanson*, 271 Neb. 57, 709 N.W.2d 337 (2006); *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000); *State v. Feiling*, 255 Neb. 427, 585 N.W.2d 456 (1998).

the general issue.[9] The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional.[10]

Here, Boche entered a plea of no contest to the charge of first degree sexual assault, and in doing so, he waived every defense to that charge, including any as-applied challenge to the constitutionality of Neb. Rev. Stat. § 28-319 (Reissue 2008), the charging statute. But the constitutional challenge Boche presents here is not directed to the statute under which he was convicted and sentenced. Rather, he argues that because he was a juvenile when he committed the offense to which he pled, it would be cruel and unusual punishment under the Eighth Amendment to impose upon him the requirements of lifetime registration and lifetime community supervision mandated by §§ 29-4001.01, 29-4003, 29-4005(1)(b), and 83-174.03. We conclude Boche did not waive an as-applied Eighth Amendment challenge to the constitutionality of these statutes by entering a no contest plea to the charge of first degree sexual assault.[11]

### (c) Ex Post Facto Challenge

In his second assignment of error, Boche contends that imposing lifetime community supervision on him amounted to ex post facto punishment. Both U.S. Const. art. I, § 10, and Neb. Const. art. I, § 16, provide that no ex post facto law may be passed. A law which purports to apply to events that occurred before the law's enactment, and which disadvantages a defendant by creating or enhancing penalties that did not exist when the offense was committed, is an ex post facto law and will not be endorsed by the courts.[12]

---

[9] See *State v. Burkhardt*, 258 Neb. 1050, 607 N.W.2d 512 (2000).

[10] *Id.*; *State v. Trackwell*, 250 Neb. 46, 547 N.W.2d 471 (1996).

[11] See, *State v. Brand*, 219 Neb. 402, 363 N.W.2d 516 (1985); *State v. Newcomer*, 23 Neb. App. 761, 875 N.W.2d 914 (2016).

[12] *State v. Harris, supra* note 7; *State v. Vela*, 279 Neb. 94, 777 N.W.2d 266 (2010).

Lifetime community supervision can only be imposed for offenses committed after July 14, 2006.[13] The information charged a timeframe for the offense which included time both before and after this date. Boche argues the factual basis presented by the State failed to specifically demonstrate his offense occurred after July 14, 2006.

[6] The State argues this assignment of error is not properly before us because Boche did not raise the ex post facto issue to the district court. A constitutional issue not presented to or passed upon by the trial court is not appropriate for consideration on appeal.[14] The record demonstrates Boche never argued to the district court that applying the lifetime community supervision requirement to him would amount to an ex post facto application of the statute because the State failed to show his offense was committed after the punishment was enacted. We therefore agree with the State that the ex post facto challenge is not properly before us, and we do not address it.

## 2. Cruel and Unusual Punishment

Boche argues that both the mandatory lifetime registration requirement and the mandatory lifetime community supervision requirement imposed on him result in cruel and unusual punishment because he was a juvenile at the time the aggravated offense was committed. In doing so, he articulates thoughtful policy arguments against imposing these requirements on juveniles convicted of aggravated sexual offenses. We emphasize here that the question before us is not the wisdom or efficacy of imposing the lifetime registration and lifetime community supervision requirements on Boche. Rather, our inquiry is limited to whether imposing the requirements violates the Eighth Amendment. In reviewing the constitutionality of a statute, we do not pass judgment

---

[13] *State v. Simnick*, 279 Neb. 499, 779 N.W.2d 335 (2010).

[14] *State v. Reinhart*, 283 Neb. 710, 811 N.W.2d 258 (2012); *State v. Ford*, 279 Neb. 453, 778 N.W.2d 473 (2010).

on the wisdom or the necessity of the legislation or whether the statute is based upon assumptions which are scientifically substantiated; even misguided laws may nevertheless be constitutional.[15]

The principles applicable to a constitutional challenge to a statute are well known. A statute is presumed to be constitutional and all reasonable doubts are resolved in favor of its constitutionality.[16] The burden of establishing the unconstitutionality of a statute is on the one attacking its validity.[17] The unconstitutionality of a statute must be clearly established before it will be declared void.[18]

### (a) Lifetime Registration

Under § 29-4005, any sex offender convicted of a registrable offense under § 29-4003 punishable by imprisonment for more than 1 year and convicted of an aggravated offense shall register for life. Registration involves providing authorities with information about the offender's name, address, place of employment, vehicles, travel documents, telephone numbers, criminal history, fingerprints, and DNA.[19] In *State v. Worm*,[20] we held these registration requirements were not punishment.

*Worm* concluded the Legislature imposed lifetime registration requirements with the intent to create a civil regulatory scheme to protect the public from the danger posed by sex offenders. We applied the seven-factor test set out by the U.S. Supreme Court in *Kennedy v. Mendoza-Martinez*[21] and

---

[15] See *Le v. Lautrup*, 271 Neb. 931, 716 N.W.2d 713 (2006).

[16] *Adams v. State, supra* note 3.

[17] *Id.*

[18] *Id.*

[19] See Neb. Rev. Stat. § 29-4006 (Supp. 2015).

[20] *State v. Worm*, 268 Neb. 74, 680 N.W.2d 151 (2004).

[21] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963).

repeated in *Smith v. Doe*[22] to determine whether the effect of the registration requirement was nevertheless so punitive that it should be regarded as punishment. We concluded it was not punishment, in part because registration is rationally connected to a nonpunitive purpose of protecting the public in that "sex offenders present a high risk to commit repeat offenses."[23] *Worm* concluded the purpose and effect of the lifetime registration requirements were not so punitive as to negate the Legislature's intent to create a civil scheme.

Boche urges us not to apply our holding in *Worm* to him because he was a juvenile at the time his aggravated offense was committed. He argues that lifetime registration should be considered punishment as to juveniles, because a primary justification for registration is to prevent recidivism, and that justification does not apply to juveniles. To support this argument, his brief cites general studies examining the risk of juvenile sex offender recidivism and notes that the Supreme Court of Pennsylvania recently recognized these studies.[24] However, Boche did not present these studies to the district court, so that court had no evidence before it related to his argument. Nor does this court. On the record before us, we see no principled reason to depart from our holding in *Worm* that lifetime registration requirements are not punishment. Other jurisdictions which have considered the issue as applied to juveniles have reached the same conclusion.[25]

---

[22] *Smith v. Doe*, 538 U.S. 84, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003).

[23] Neb. Rev. Stat. § 29-4002 (Reissue 2008). See *State v. Worm, supra* note 20. See, also, *Smith v. Doe, supra* note 22.

[24] See *In re J.B.*, 630 Pa. 408, 107 A.3d 1 (2014).

[25] See, e.g., *U.S. v. Under Seal*, 709 F.3d 257 (4th Cir. 2013); *In re A.C.*, 2016 IL App (1st) 153047, 54 N.E.3d 952, 403 Ill. Dec. 811 (2016); *People in Interest of J.O.*, No. 14CA0622, 2015 WL 5042709 (Colo. App. Aug. 27, 2015); *State ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 909 N.E.2d 783, 330 Ill. Dec. 761 (2009). Accord *U.S. v. Juvenile Male*, 670 F.3d 999 (9th Cir. 2012).

[7] Because we conclude the lifetime registration require-ments imposed on Boche are not punishment, his argument that these registration requirements amount to cruel and unusual punishment must necessarily fail.

For the sake of completeness, we note that even if the lifetime registration requirements could be characterized as punishment as to Boche, they would not amount to cruel and unusual punishment for largely the same reasons we articulate next with respect to the lifetime community supervi-sion requirements.

### (b) Lifetime Community Supervision

[8] In *State v. Payan*,[26] we concluded that unlike life-time registration, lifetime community supervision in Nebraska is akin to parole and thus is punishment. Although *Payan* involved an adult sex offender, we see no reason why life-time community supervision would not also be punishment for juvenile sex offenders. As such, we proceed to examine Boche's argument that imposing lifetime community super-vision on him amounts to cruel and unusual punishment, because he was a juvenile when he committed the aggra-vated offense.

Some additional background aids our analysis. According to § 83-174.03(1)(c), any individual who, on or after July 14, 2006, is convicted of an aggravated offense as defined in § 29-4001.01 shall be subject to lifetime community supervi-sion by the Office of Parole Administration. An aggravated offense under § 29-4001.01 is any registrable offense under § 29-4003 which involves the penetration of, direct genital touching of, oral-to-anal contact with, or oral-to-genital contact with a victim under the age of 13 years.[27] Boche committed a registrable offense under § 29-4003 because he meets the defi-nition of "any person who on or after January 1, 1997" is found

---

[26] *State v. Payan*, 277 Neb. 663, 765 N.W.2d 192 (2009).

[27] § 29-4001.01(1)(b).

guilty of sexual assault pursuant to § 28-319.[28] The trial court found the sexual assault was an aggravated offense, because the victim was under the age of 13.

Individuals subject to lifetime community supervision undergo a risk assessment and evaluation by the Office of Parole Administration to determine the conditions of the supervision to be imposed "to best protect the public from the risk that the individual will reoffend."[29] Conditions may include drug and alcohol testing; restrictions on employment and leisure activities necessary to minimize interaction with potential victims; regularly reporting to a community supervision officer; providing notice of changes to address or employment; providing access to medical records; agreeing to available medical and psychological treatment, including submission to polygraph examinations; and any other conditions designed to minimize the risk of recidivism, including electronic monitoring.[30] The conditions imposed "shall be the least restrictive conditions available, in terms of the effect on the individual's personal freedom, which minimize the risk of recidivism and are compatible with public safety."[31]

Information considered when determining the requisite conditions to be imposed on an individual includes: a caseworker report detailing the individual's personality, social history, and ability to adjust to authority; the individual's prior criminal record, including reports of probation and parole experiences; the presentence investigation report; reports of any physical, mental, or psychiatric examinations of the individual; relevant information submitted by the individual, his or her attorney, the victim of the crime, or other persons; and such other relevant information concerning the individual as may reasonable be

---

[28] § 29-4003(1)(a)(i)(c).

[29] § 83-174.03(3).

[30] § 83-174.03(4).

[31] Neb. Rev. Stat. § 83-1,103.02(1)(d) (Reissue 2014).

available.[32] The individual has a right to appeal a determination or revision of the conditions of supervision.[33] Relevant considerations in any such appeal include whether the conditions reduce the risk of the individual's reoffending and whether less restrictive conditions are available which would equally or more effectively reduce the risk of reoffense.[34]

Boche contends that imposition of lifetime supervision requirements on him results in cruel and unusual punishment because he was a juvenile when he committed the aggravated offense. To support his argument, he relies on two recent decisions from the U.S. Supreme Court: *Graham v. Florida*[35] and *Miller v. Alabama*.[36]

In *Graham*, the Court considered whether the Eighth Amendment prohibited the imposition of a life without parole sentence on a juvenile who committed a nonhomicide offense. In doing so, it recognized that the Eighth Amendment states: "'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted.'"[37] The Court recognized that to determine whether a punishment is cruel and unusual, it must look to the evolving standards of decency that mark the progress of a maturing society. This is necessary because the standard of extreme cruelty is not merely descriptive, but necessarily embodies a moral judgment. The *Graham* Court observed that the standard itself remains the same, but its applicability must change as the basic mores of society change.[38]

---

[32] § 83-1,103.02(1)(e).

[33] Neb. Rev. Stat. § 83-1,103.04 (Reissue 2014).

[34] *Id.*

[35] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

[36] *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

[37] *Graham v. Florida, supra* note 35, 560 U.S. at 58.

[38] *Id.*

*Graham* recognized that the concept of proportionality is central to the Eighth Amendment. It recognized that the Court's prior cases addressing the proportionality of sentences fell within two general categories: challenges to the length of a term-of-years sentence given all the circumstances and challenges in cases involving categorical restrictions on implementation of the death penalty. It determined that the issue before it was a categorical challenge to a term-of-years sentence and concluded that because it was a sentencing practice itself that was in question, the proper approach was the categorical one.

According to *Graham*, the analysis begins with objective indicia of national consensus, because the clearest and most reliable objective evidence of contemporary values is the legislation enacted by the states' legislatures. *Graham* thus addressed how the various states sentenced juveniles convicted of nonhomicide offenses. The Court ultimately concluded it was quite rare for a state to impose a life sentence without parole on juveniles convicted of a nonhomicide crime and that a national consensus had developed against it.

The Court in *Graham* then noted that community consensus, while entitled to great weight, was not itself determinative of whether a punishment is cruel and unusual. It reasoned that the judicial exercise of independent judgment requires consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question. In this inquiry, the Court also considers whether the challenged sentencing practice serves legitimate penological goals.

As to the culpability of juveniles, the *Graham* Court recognized its prior holding[39] that because juveniles have lessened mental culpability, they are less deserving of the most severe punishments than adults. *Graham* emphasized that juveniles

---

[39] *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) (holding Eighth Amendment prohibits execution of juvenile convicted of homicide).

have a "'lack of maturity and an underdeveloped sense of responsibility'"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." . . . "[I]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption."[40]

As to the nature of the offense at issue, *Graham* recognized a distinction between homicide and other serious violent offenses against the individual. Serious nonhomicide offenses may be "'devastating in their harm . . . but "in terms of moral depravity and of the injury to the person and to the public," . . . they cannot be compared to murder in their "severity and irrevocability."'"[41] *Graham* recognized that the punishment of life without parole is the second most severe punishment permitted by law and that such sentences share some characteristics with death sentences that are shared by no other sentences. It noted that a life without parole sentence for a juvenile means a denial of hope, that good behavior and character improvement are immaterial, and that whatever the future might hold in store for the mind and spirit, the juvenile will remain in prison for the rest of his days. It also noted that the penological justifications for a life without parole sentence for a juvenile were lacking, largely because such a sentence denied the juvenile an opportunity to demonstrate growth and maturity. Ultimately, the Court in *Graham* concluded that due to the limited culpability of juvenile offenders and the severity of the punishment of life without parole, sentencing a juvenile to life imprisonment without parole for a nonhomicide offense was cruel and unusual.

---

[40] *Graham v. Florida, supra* note 35, 560 U.S. at 68.

[41] *Id.*, 560 U.S. at 69.

Two years later, in *Miller*, the Court held the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for a juvenile who has committed a homicide.[42] In doing so, it noted that the Eighth Amendment's prohibition against cruel and unusual punishment guarantees individuals the right not to be subjected to excessive sanctions. It explained that right flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense. It again noted the concept of proportionality is central to the Eighth Amendment and is viewed according to evolving standards of decency that mark the progress of a maturing society.

The *Miller* Court recognized that in the past, it had adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty.[43] It thus reiterated many of the principles enunciated in *Graham*. It further noted that *Graham* likened life without parole for juveniles to the death penalty for adults, thus evoking as to juveniles facing such a sentence additional precedent requiring sentencing authorities to consider the individual characteristics of the defendant before sentencing. It reasoned that based on *Graham* and prior precedent, "in imposing a State's harshest penalties, a sentencer misses too much if he treats every child as an adult."[44] But the Court in *Miller* specifically noted that a sentence which is not otherwise cruel and unusual does not become so simply because it is mandatory.

---

[42] *Miller v. Alabama, supra* note 36.

[43] See, *Graham v Florida, supra* note 35; *Roper v. Simmons, supra* note 39; *Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).

[44] *Miller v. Alabama, supra* note 36, 132 S. Ct. at 2468.

### (i) National Consensus

[9] Both *Graham* and *Miller* recognize that the first step in a categorical cruel and unusual punishment analysis is examination of the national consensus on the issue. That is, we must look at how common or rare it is for jurisdictions to impose mandatory lifetime community supervision on juvenile sex offenders convicted of aggravated offenses in criminal court.

Boche, however, did not present any evidence, or even argument, to the district court on this prong of the test. Nor does he attempt to undertake any type of analysis of the national consensus in his brief. It is incumbent upon an appellant to supply a record which supports his or her appeal.[45] Absent such a record, as a general rule, the decision of the lower court as to those errors is to be affirmed.[46] On this record, our ability to thoroughly review this step is thus somewhat restricted.[47]

We note, however, that the Kansas Supreme Court recently attempted to undertake a similar analysis and generally concluded there is no national consensus either for or against imposing mandatory lifetime community supervision on juvenile sex offenders sentenced in criminal court.[48]

### (ii) Independent Judgment

[10] The second step in the analysis requires this court to exercise its own independent judgment as to whether the punishment in question violates the Eighth Amendment.[49] The judicial exercise of independent judgment requires

---

[45] *State v. Custer*, 292 Neb. 88, 871 N.W.2d 243 (2015); *State v. Robinson*, 287 Neb. 799, 844 N.W.2d 312 (2014).

[46] *State v. Iromuanya*, 272 Neb. 178, 719 N.W.2d 263 (2006).

[47] *Graham v. Florida, supra* note 35, 560 U.S. at 63 (holding that "it is for the litigants to provide data to aid the Court" on national consensus prong of categorical cruel and unusual punishment analysis).

[48] *State v. Dull*, 302 Kan. 32, 351 P.3d 641 (2015).

[49] See, *Miller v. Alabama, supra* note 36; *Graham v. Florida, supra* note 35.

consideration of the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question.[50] In this inquiry, the court also considers whether the challenged sentencing practice serves legitimate penological goals.[51]

### a. Culpability of Offenders

There is no disputing that Boche's crime was serious. First degree sexual assault is a Class II felony, and sexual assaults against children often have devastating physical and psychological consequences for victims. Boche relies heavily on what *Graham* and *Miller* said generally about the diminished capacity and reduced culpability of juvenile offenders. We agree that the Court's observations in *Graham* and *Miller* and about the reduced culpability and diminished capacity of juvenile offenders as a class generally applies to juvenile sex offenders. As the Court noted in *Graham*: "'[F]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.'"[52]

But acknowledging the diminished capacity and reduced culpability of juvenile sex offenders does not lead to the conclusion that all punishment that is constitutionally permissible for adult sex offenders is automatically cruel and unusual punishment as to juveniles. Rather, the additional factors articulated by the Court in *Graham* and *Miller* have to be analyzed in light of the particular punishment at issue.

### b. Severity of Punishment

The severity of the punishment at issue is a key factor in the constitutional analysis. *Graham* and *Miller* emphasized that life without parole and death are the two most severe punishments permitted by law in that they deprive the one

---

[50] *Graham v. Florida, supra* note 35.

[51] *Id.*

[52] *Id.*, 560 U.S. at 68.

convicted of the most basic liberties without any hope those liberties can be restored. According to *Graham*, a life without parole sentence "'means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days.'"[53]

A punishment of lifetime community supervision is nowhere near as severe as the punishment of life in prison without parole or death. While lifetime community supervision is severe in duration, it does not so restrict a juvenile's basic liberties that he or she has no opportunity, incentive, or means to take steps to improve his or her behavior and character. Simply stated, there is no denial of hope for a juvenile sex offender sentenced to lifetime community supervision. To the contrary, he or she can enjoy many of life's basic liberties and has every opportunity and incentive to demonstrate growth and maturity. As we recognized in *Payan*, lifetime community supervision is akin to parole,[54] and the unavailability of parole to the juveniles in *Graham* and *Miller* was a key factor in the Court's finding that the punishment was cruel and unusual. Here, we think it would be illogical to conclude that a punishment which is very comparable to parole runs afoul of the principles articulated in *Graham* and *Miller*.

Further, as detailed earlier in this opinion, in Nebraska, the actual conditions of community supervision are narrowly tailored to each individual and subject to annual review. Our statutes specify that the conditions imposed are to be the "least restrictive conditions available, in terms of the effect on an individual's personal freedom, which minimize the risk of recidivism and are compatible with public safety."[55] Under our statutes, an individual's good behavior and character

---

[53] *Id.*, 560 U.S. at 70.

[54] *State v. Payan, supra* note 26.

[55] § 83-1,103.02(1)(d).

improvement can directly affect the terms and conditions of the supervision, so he or she has additional and direct incentive to improve character, behavior, mind, and spirit. Especially in light of Nebraska's statutory scheme, the punishment of lifetime community supervision is not particularly severe, even though it is imposed for life.

### c. Penological Goals

According to *Graham*, there are four legitimate goals of penal sanctions: retribution, deterrence, incapacitation, and rehabilitation. *Graham* reasoned that none of these goals provides an adequate justification for imposing a sentence of life without parole on a juvenile who did not commit homicide, largely because the punishment denies the offender an opportunity to demonstrate growth and maturity.

We do not think the same conclusion is warranted with respect to lifetime community supervision. This is true largely because, as we previously determined, lifetime community supervision differs greatly in severity from lifetime imprisonment or death. A juvenile subject to lifetime community supervision is not denied all hope, and the penological goals of rehabilitation and deterrence justify imposition of lifetime community supervision on sex offenders.

### (c) Individualized Sentencing

Boche also relies on *Miller*'s emphasis on individualized sentencing to argue lifetime community supervision is cruel and unusual when applied to juveniles convicted of aggravated sex offenses. *Miller* reasoned that because life without parole was the most severe punishment that could legally be imposed on a juvenile, it was logical to equate that punishment with the most severe punishment that could legally be imposed on an adult—death. *Miller* thus reasoned that the individualized sentencing required in capital cases as to adults equally applied to juveniles sentenced to life without parole. Boche urges us to apply the concept of individualized sentencing in *Miller* to juvenile sex offenders.

We are not convinced that the requirement of individualized sentencing applies to juveniles in cases other than homicides involving a possible sentence of life without parole.[56] But we need not resolve the issue here, because Nebraska's lifetime community supervision statutes already require significant individualized consideration of each person subject to supervision.[57] Such consideration is mandated so that those sex offenders who present a lower risk to the community are supervised accordingly.

As such, the flexibility that was absent in the statutory sentencing scheme considered in *Miller* is mandatory under Nebraska's statutory scheme. Specifically, individuals subject to lifetime community supervision "undergo a risk assessment and evaluation by the Office of Parole Administration to determine the conditions of community supervision to be imposed to best protect the public from the risk that the individual will reoffend."[58] The conditions of supervision imposed must be those which "most effectively minimize the risk of the individual committing another sex offense. The conditions shall be the least restrictive conditions available, in terms of the effect on the individual's personal freedom, which minimize the risk of recidivism and are compatible with public safety."[59] The individual can appeal the supervision conditions imposed.[60] In addition, the conditions of community supervision are reviewed by the Office of Parole Administration on an annual basis and can be revised so that the individual's freedom is not unnecessarily restricted.[61] Nebraska's statutory scheme for lifetime community supervision is individualized, adaptive, and incentivizes rehabilitation.

---

[56] See, generally, *State v. Cardeilhac*, 293 Neb. 200, 876 N.W.2d 876 (2016).

[57] *Id.*

[58] § 83-174.03(3).

[59] § 83-1,103.02(1)(d).

[60] § 83-1,103.04.

[61] Neb. Rev. Stat. § 83-1,103.03 (Reissue 2014).

### (d) Summary

[11] The U.S. Supreme Court has recognized that juvenile offenders have diminished culpability and in general should be given an opportunity and an incentive to demonstrate positive changes in character, behavior, mind, and spirit. But we conclude a sentence of lifetime community supervision is not a severe restriction on a juvenile sex offender's personal liberties and ability to demonstrate such changes, particularly because that sentence is imposed in Nebraska, and thus is not a sentence that can compare in severity to a sentence of life imprisonment without parole or death. And it is only with respect to those two extremely severe sentences that the U.S. Supreme Court has found a punishment applicable to adults becomes cruel and unusual when applied to juveniles. As such, we hold that sentencing Boche to lifetime community supervision did not amount to cruel and unusual punishment.

We recognize that the Kansas Supreme Court recently held that mandatory lifetime postrelease supervision is cruel and unusual punishment when applied to a juvenile sex offender.[62] In doing so, that court explicitly found the provisions of Kansas' supervision were "'more severe than most other jurisdictions'"[63] and recognized that the provisions resulted in a "sentence that restricts the juvenile's liberty for life without any chance, hope, or legal mechanism of having those restrictions lifted or even reduced."[64] Because the substance of Nebraska's lifetime community supervision requirements differ significantly and materially from that considered by the Kansas Supreme Court, we do not find the Kansas opinion helpful in answering the question presented here.

### V. CONCLUSION

For the foregoing reasons, we conclude neither the requirement of lifetime registration nor the requirement of lifetime

---

[62] See *State v. Dull, supra* note 48.

[63] *Id.* at 53, 351 P.3d at 655.

[64] *Id*. at 55, 351 P.3d at 657.

community supervision is cruel and unusual punishment as to Boche. We therefore affirm his conviction and sentence.

Affirmed.

Connolly, J., not participating in the decision.
Heavican, C.J., not participating.

Bishop, Judge, concurring.

Based upon the errors assigned and the current state of the law, I concur with the majority's analysis. I write separately to point out a void in our criminal and juvenile statutes to address a situation such as the one presented here where unlawful acts committed by Boche between the ages of 11 and 16 were not charged until he was an adult. Disposition under the juvenile code was no longer an option. See *State v. Parks*, 282 Neb. 454, 803 N.W.2d 761 (2011) (juvenile court's jurisdiction ends once juvenile reaches age of majority; whether sex offender registration laws should apply to juveniles not decided). The majority opinion acknowledges that juvenile offenders have diminished culpability and should be given an "opportunity and an incentive to demonstrate positive changes in character, behavior, mind, and spirit"; however, the lifetime sanctions imposed upon Boche provide no such opportunity and incentive. The majority aptly quotes from *Graham v. Florida*, 560 U.S. 48, 68, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), wherein the U.S. Supreme Court states that "'[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed.'" For many reasons, Boche should demonstrate that his past childhood character deficiencies have been or can be reformed; nevertheless, he must live his lifetime knowing that such reformation will not impact the duration of his registration and supervision obligations. It concerns me that delays in prosecuting juveniles, whatever the reason for the delay, can result in unnecessarily harsh outcomes not consistent with the goals of the juvenile code—a code that recognizes the

diminished culpability of children and seeks to be more reha-bilitative than punitive.

That said, I agree with the majority that the Eighth Amendment's prohibition against cruel and unusual punish-ment is not the source for relief in this case. And our statutes likewise provide no relief in these circumstances. Neb. Rev. Stat. § 29-2204(5) (Supp. 2015) states that when

> the defendant was under eighteen years of age at the time he or she committed the crime for which he or she was convicted, the court may, in its discretion, instead of imposing the penalty provided for the crime, make such disposition of the defendant as the court deems proper under the Nebraska Juvenile Code.

As previously noted, however, disposition under the juvenile code was no longer an option for Boche because he had passed the age of majority by the time he was charged. Unfortunately for Boche, there is no statutory authority giving a sentencing court any discretion with regard to lifetime registration and supervision in a situation such as this. However, whether or not the criminal and juvenile statutes should address these circumstances is a policy decision for the Legislature, not the courts.