# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #031

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **27th day of June, 2025** are as follows:

**BY Crain, J.:**

2024-CK-00254      *STATE OF LOUISIANA IN THE INTEREST OF D.D. (Parish of St. Tammany)*

AFFIRMED. SEE OPINION.

Weimer, C.J., additionally concurs and assigns reasons.
Hughes, J., dissents and assigns reasons.
Griffin, J., dissents.
Guidry, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2024-CK-00254

## STATE OF LOUISIANA IN THE INTEREST OF D.D.

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of St. Tammany

**CRAIN, J.**

In this juvenile proceeding, we find Louisiana's sex offender registration law, when applied to a juvenile, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment or implicate the Sixth Amendment's right to a jury trial.

### FACTS AND PROCEDURAL HISTORY

D.D. was adjudicated delinquent for committing second degree rape in violation of Louisiana Revised Statute 14:42.1A(1). He was fourteen years old at the time of the delinquent act and sixteen when adjudicated. The juvenile court committed D.D. to the custody of the Office of Juvenile Justice until his twenty-first birthday. As required by law, D.D. was also informed he must register as a sex offender upon his release from confinement. *See* La. Child. Code art. 884.1A(2); La. R.S. 15:542A(3)(b) and C(2). In a pre-adjudication motion, D.D. challenged the constitutionality of the registration requirement, arguing application of the law to a juvenile is unconstitutional under the Sixth and Eighth Amendments of the U.S. Constitution. The juvenile court denied the motion.

D.D. appealed, asserting assignments of error concerning the adjudication and the denial of his motion contesting the constitutionality of the sex offender registration requirement. The court of appeal affirmed the adjudication and denial of the constitutional claims. *See State in Interest of D.D.*, 23-0754 (La. App. 1 Cir.

1/26/24), 383 So. 3d 1000.  This court granted D.D.'s writ application. *See State in Interest of D.D.*, 24-0254 (La. 11/27/24), 396 So. 3d 440.

D.D. argues his adjudication is not supported by sufficient evidence to prove the delinquent act. He further maintains the juvenile court erred by limiting questions of a witness and not considering another witness's failure to preserve cell phone data.  Lastly, D.D. seeks review of the denial of his constitutional claims.  This final assignment of error prompted our writ grant; however, we recognize courts should avoid constitutional rulings when the case can be disposed of on nonconstitutional grounds. *Cat's Meow, Inc. v. City of New Orleans Through Department of Fin.*, 98-0601 (La. 10/20/98), 720 So. 2d 1186, 1199.  Mindful of this principle, we have reviewed D.D.'s assignments of error concerning the sufficiency of the evidence and the specified evidentiary rulings, which were thoroughly addressed by the court of appeal, and find no merit to those assignments. *See State in Interest of D.D.*, 383 So. 3d at 1006-09.  Our discussion thus begins with D.D.'s constitutional claims.

## DISCUSSION

All government originates with the people and is founded on their will alone. *See* La. Const. art. I.  Unlike the federal constitution, the provisions of our state constitution are not grants of power but instead are limitations on the otherwise plenary power of the people exercised through the legislature. *Hainkel v. Henry*, 313 So. 2d 577, 579 (La. 1975). A party challenging the constitutionality of a statute must therefore point to a particular provision of the state or federal constitution that restricts the legislature's power to enact the statute. *See Welch v. United Medical Healthwest-New Orleans L.L.C.*, 24-0899 (La. 3/21/25), 403 So. 3d 554, 561, *reh'g denied,* 24-0899 (La. 5/8/25); *Board of Directors of Louisiana Recovery Dist. v. All Taxpayers, Prop. Owners, & Citizens of State of La.*, 529 So. 2d 384, 387 (La. 1988).

Unless fundamental rights or privileges and immunities are involved, a strong presumption exists the legislature acted within its constitutional authority in

2

adopting legislation. *Welch*, 403 So. 3d at 561; *Board of Directors of Louisiana Recovery District*, 529 So. 2d at 387. Statutes are generally presumed constitutional, and the party challenging the validity of the statute bears the burden of proving it is unconstitutional. *State v. Spell*, 21-0876 (La. 5/13/22), 339 So. 3d 1125, 1130-31; *State v. Hatton*, 07-2377 (La. 7/1/08), 985 So. 2d 709, 719. This presumption is especially forceful with statutes enacted to promote a public purpose. *Welch*, 403 So. 3d at 561; *Polk v. Edwards*, 626 So. 2d 1128, 1132 (La.1993). Doubt as to legislation's constitutionality is resolved in favor of its constitutionality. *Welch*, 403 So.3d at 562; *Polk*, 626 So. 2d at 1132. The constitutionality of a statute presents a question of law subject to *de novo* review. *Welch*, 403 So.3d at 561; *Spell*, 339 So. 3d at 1130.

D.D.'s constitutional challenge targets Louisiana's sex offender registration law ("Act"), specifically the statutory requirement that he register as a sex offender because of his adjudication for second degree rape. *See* La. R.S. 15:542A(3)(b). The Act mandates D.D. register with appropriate law enforcement agencies within three days of his release from custody. *See* La. R.S. 15:542C(2). To register, D.D. must provide his name, address, and information about his conviction to those agencies, along with additional information such as his social security number, birthdate, a current photograph, DNA sample, and physical characteristics such as sex, race, hair color, weight, scars, and tattoos. *See* La. R.S. 15:542C(1)-(2). A central registry to help disseminate this information to law enforcement agencies was created by the Act. *See* La. R.S. 15:542.1.5A(1) and D. The registry is also accessible online by the general public, but the website does not publish some of the offender's more personal information, like his social security number, telephone number, and email addresses. *See* La. R.S. 15:542.1.5A(2).

The Act also contains extensive community-notification provisions that require an offender publicize his conviction in a notice that must be provided to a

3

broad swath of people within a certain radius of his residence.  *See* La. R.S. 15:542.1A(1)-(2).  The notice must also be published twice in the official journal of the parish where the offender resides and included in any online profiles. *See* La. R.S. 15:542.1A(2)(a) and D(1).  Other notices may be required, and all community notifications must be repeated every five years.  *See* La. R.S. 15:542.1A(2)(b) and (3).[1]

Significantly for present purposes, juveniles such as D.D. are exempt from all community-notification requirements, with one exception.  Subsection 15:542.1C provides:

> Any juvenile required to register in accordance with the provisions of this Chapter shall be exempt from any notification requirements of this Section except for the notification required by the provisions of Subsection B of this Section.

The noted exception applies if the offender provides recreational instruction to persons under the age of seventeen, in which case he has to post the notice in the building or facility where the instruction is given.  *See* La. R.S. 15:542.1B.  D.D. has not challenged this community-notification provision.  Accordingly, when analyzing D.D.'s constitutional challenges, our review is confined to the Act's registration requirements. The community-notification provisions are either not applicable or not at issue.  *See* La. R.S. 15:542.1C.

D.D. contends the Act's registration requirement, when applied to a juvenile, violates the Eighth Amendment's prohibition against "cruel and unusual punishments" and constitutes an adult criminal sentence imposed without the constitutional safeguard of a jury trial.  We address each of these claims separately.

---

[1]     Many of the Act's requirements track federal legislation, which conditioned federal funds on states adopting registration and community-notification provisions for sex offenders. *See* 34 U.S.C.A. § 20927(a).

*Eighth Amendment Claim*

The threshold question for D.D.'s Eighth Amendment claim is whether the Act's registration requirement is "punishment." "The Cruel and Unusual Punishments Clause focuses on . . . what method or kind of punishment a government may impose after a criminal conviction." *City of Grants Pass, Oregon v. Johnson*, 603 U.S. 520, 542; 144 S.Ct. 2202, 2216; 219 L.Ed.2d 941 (2024) (internal quotation marks omitted). The Eighth Amendment "limits the kinds of punishment that can be imposed on those convicted of crimes." *Ingraham v. Wright*, 430 U.S. 651, 667; 97 S.Ct. 1401, 1410; 51 L.Ed.2d 711 (1977). "The common inquiry across the [Supreme] Court's Eighth Amendment, *ex post facto*, and double jeopardy jurisprudence is determining whether the government's sanction is punitive in nature and intended to serve as punishment." *Hinds v. Lynch*, 790 F.3d 259, 265 (1st Cir. 2015).

In a consistent line of cases, this court has repeatedly held the Act's requirements are not punishment.[2] The Act creates a civil regulatory scheme intended to protect the public from sex offenders, who often pose a high risk of recidivism, by facilitating the exchange of relevant information among law

---

[2] *See State v. Cook*, 16-1518 (La. 5/3/17), 226 So. 3d 387, 392 (*per curiam*) ("The registration and notification law is . . . a civil regulatory scheme that is intended to alert the public and law enforcement for purposes of public safety; it is not part of a sex offender's punishment."); *State v. I.C.S.*, 13-1023 (La. 7/1/14), 145 So. 3d 350, 355-56 ("The registration requirement is not intended to be punitive, but is instead intended to further the legitimate public purpose of protecting the community."); *State v. Trosclair*, 11-2302 (La. 5/8/12), 89 So. 3d 340, 356-57 ("[P]unitive aspects [of amendment extending post-release supervision period for sex offenders] . . . are not sufficient to constitute the clearest proof [necessary] to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."); *Smith v. State*, 10-1140 (La. 1/24/12), 84 So. 3d 487, 497-98 ("It is well-settled that Louisiana's sex offender registration requirements are not punitive, but rather, they are remedial and may be applied retroactively without violating the prohibition of the *ex post facto* clause.); *State v. Golston*, 10-2804 (La. 7/1/11), 67 So. 3d 452, 463 (Sex Offender Assessment Panel (SOAP) procedure for sex offenders is "regulatory, rather than criminal."); *State v. Patin*, 02-1126 (La. 4/9/03), 842 So. 2d 322, 325 ("Given the remedial purpose of Louisiana's sex offender registration and notice law . . ., the law in effect at the time of sentencing . . . may apply to respondent without violating the Ex Post Facto Clauses of the federal and state constitutions.); *State ex rel. Olivieri v. State*, 00-0172 (La. 2/21/01), 779 So. 2d 735, 748 ("[T]he effect of the interrelated components of this legislation is not so obtrusive that we would find it punitive rather than remedial or regulatory as was the intention of the Legislature.").

enforcement agencies and alerting the public. *See* La. R.S. 15:540; *State v. Cook*, 16-1518 (La. 5/3/17), 226 So. 3d 387, 392 (*per curiam*); *State v. I.C.S.*, 13-1023 (La. 7/1/14), 145 So. 3d 350, 355-56; *State ex rel. Olivieri v. State*, 00-0172 (La. 2/21/01), 779 So. 2d 735, 747. This determination is based on a two-step process that first looks at the legislative intent behind the Act and next considers the effects of the law in application. *See I.C.S.*, 145 So. 3d at 355-56; *State v. Trosclair*, 11-2302 (La. 5/8/12), 89 So. 3d 340, 357; *Olivieri*, 779 So. 2d at 747; *see also Smith v. Doe*, 538 U.S. 84; 123 S.Ct. 1140, 1147; 155 L.Ed.2d 164 (2003).

The legislative intent is apparent from the stated findings and purposes in the Act, which begins by recognizing a paramount governmental interest in protecting the public from sex offenders, who often post a high risk of recidivism. *See* La. R.S. 15:540A. The lack of available information about these offenders had historically impaired law enforcement's efforts to protect their communities, conduct investigations, and quickly apprehend offenders. *Id.* These findings and purposes reflect "an avowedly non-punitive intent" in enacting the law. *Olivieri*, 779 So. 2d at 747. "[I]t is apparent the intent of the Legislature was to alert the public for the purpose of public safety, a remedial intent, not to punish convicted sex offenders." *Olivieri*, 779 So. 2d at 747. "The explicit purpose of the provisions at issue, therefore, is civil, rather than punitive, for the protection of the public." *Trosclair*, 89 So. 3d at 350 (applying Act's supervised probation provisions with similar legislative findings).

The second step examines whether a statutory scheme is so punitive in effect as to negate the legislature's intention to deem it civil. *See Trosclair*, 89 So. 3d at 348; *Olivieri*, 779 So. 2d at 747; *see also Smith*, 538 U.S. at 92; 123 S.Ct. at 1147. Only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Trosclair*, 89 So. 3d at 351; *Smith*, 538 U.S. at 92; 123 S.Ct. at 1147. Applying this standard, our

6

precedent has found the Act's effects are "not so obtrusive that we would find it punitive rather than remedial or regulatory as was the intention of the Legislature." *Olivieri*, 779 So. 2d at 749. The punitive aspects are thus not sufficient to constitute the clearest proof necessary to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Trosclair*, 89 So. 3d at 357; *see also Smith*, 538 U.S. at 92; 123 S.Ct. at 1147.

While much of our prior jurisprudence addressed *ex post facto* challenges to the Act's requirements, the analysis and holdings of those cases are instructive for Eighth Amendment claims. In analyzing the effects of the Act, the courts looked to federal jurisprudence and used a multifaceted inquiry, sometimes known as the *Mendoza-Martinez* factors, to find the law was civil rather than punitive. *See Trosclair*, 89 So. 3d at 351; *Olivieri*, 779 So. 2d at 745; *see also Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168; 83 S.Ct. 554, 567; 9 L.Ed.2d 644 (1963). As explained by the U.S. Supreme Court, this approach is partially rooted in Eighth Amendment jurisprudence:

> These factors, which migrated into our *ex post facto* law from double jeopardy jurisprudence, have their earlier origins in cases under the Sixth and Eighth Amendments, as well as the Bill of Attainder and the Ex Post Facto Clauses . . . . [T]he *Mendoza-Martinez* factors are designed to apply in various constitutional contexts.

*Smith*, 538 U.S. at 97; 123 S.Ct. at 1149. The holdings in the *Olivieri-Trosclair* line of cases thus firmly support the conclusion the Act does not impose "punishment" subject to scrutiny under the Eighth Amendment.

D.D. argues a different result is warranted when the Act's registration requirement is imposed on a juvenile. According to D.D., the registration requirement is a lifelong sentence that follows him into adulthood and destroys the confidential nature of his adjudication. D.D. argues these effects are wholly inconsistent with the rehabilitation objective of the juvenile justice system and amount to cruel and unusual punishment.

7

As previously stated, in considering whether the punitive effects of a law are sufficient to override legislative intent deeming it civil, courts are aided by the *Mendoza-Martinez* factors, a series of inquiries used to distinguish between civil regulatory measures and criminal punishment. *See Trosclair*, 89 So. 3d at 357; *Smith*, 538 U.S. at 97; 123 S.Ct. at 1149; *Mendoza-Martinez*, 372 U.S. at 168; 83 S.Ct. at 567; *Trosclair*, 89 So. 3d at 351. The five factors relevant to the present claim ask if the effects of the sex offender registration requirement (1) have historically been regarded as punishment, (2) impose an affirmative disability or restraint, (3) promote the traditional aims of punishment, (4) have a rational connection to a nonpunitive purpose, and (5) are not excessive with respect to this purpose. *See Smith*, 538 U.S. at 97; 123 S.Ct. at 1149. These are "useful guideposts" that are neither exhaustive nor dispositive. *Id.* Because courts ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Id.*; *see also Trosclair*, 89 So. 3d at 351.

For the first factor, this court has recognized that compliance with the Act's requirements may humiliate an offender; however, *Olivieri* distinguished this embarrassment from historical forms of punishment that intentionally used humiliation for punitive purposes, explaining:

> [C]hastisement . . . is not the primary purpose of [the Act's] notification; rather, notification is utilized to protect the public and deter the reoccurrence of similar crimes . . . . [A]lthough Louisiana's [Act] has provisions which may be remotely similar to historical forms of punishment, the immediate need for public protection [through notification] is a corollary of rather than an addendum to the punishment of sex offenders.

*Olivieri*, 779 So. 2d at 748. Interpreting a comparable registration requirement in an Alaska law, the U.S. Supreme Court similarly recognized:

> Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment. . . . The purpose and the principal effect of notification are to inform the

8

public for its own safety, not to humiliate the offender. Widespread public access is necessary for the efficacy of the scheme, and the attendant humiliation is but a collateral consequence of a valid regulation.

*Smith*, 538 U.S. at 98-99; 123 S.Ct. at 1150. Louisiana's Act significantly reduces the corollary effect of public embarrassment for juveniles by exempting them from almost all community-notification requirements. *See* La. R.S. 15:542.1C.

D.D. maintains the public embarrassment is still more punitive for a juvenile because registering as a sex offender will divulge otherwise confidential information about his adjudication. This is incorrect. D.D. was adjudicated for a crime of violence. *See* La. R.S. 14:2B(10). "All proceedings in a juvenile delinquency case involving a crime of violence as defined in R.S. 14:2(B) . . . shall be open to the public." La. Child. Code art. 879B(1). The confidentiality of records and reports in juvenile court proceedings "shall not apply to records relative to any matters identified in Article 879(B)(1) [crimes of violence], in which those records and reports shall be made available to the public." La. Child. Code art. 412N. Juvenile delinquency cases involving crimes of violence are thus open to the public. *See In re C.B.*, 97-2783 (La. 3/4/98), 708 So. 2d 391, 396. The only exceptions are the offender's medical records, mental health records, social records, and school records, and any records related to the victim. *Id.* The registration requirement will not result in the disclosure of any information about D.D.'s offense not currently available to the public. *See* La. Child. Code arts. 412N and 879B(1).

For the second and third factors, we agree with *Smith* that the registration requirement does not impose an affirmative disability or restraint, and the deterrence effect is not sufficient to render the Act punitive. *See Smith*, 538 U.S. 99-100; 123 S.Ct. at 1151-52.

The fourth and fifth inquiries ask if the registration requirement has a rational connection to a nonpunitive purpose and is not excessive with respect to that

9

purpose. A rational connection to a nonpunitive purpose is a "most significant" factor in the analysis. *Smith*, 538 U.S. 102-03; 123 S.Ct. at 1152; *Trosclair*, 89 So. 3d at 354. The connection need only be rational; "[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Trosclair*, 89 So. 3d at 354 (quoting *Smith*, 538 U.S. at 103; 123 S.Ct. at 1152). While the excessiveness element also receives great weight, this factor "is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith*, 538 U.S. at 105; 123 S.Ct. at 1154; *see also Trosclair*, 89 So. 3d at 354.

The Louisiana legislature recognized that a lack of available information about sex offenders impaired law enforcement's ability to protect their communities, conduct investigations, and quickly apprehend offenders. *See* La. R.S. 15:540A. The registration process provides an accessible source of this information that can be readily exchanged between public agencies, providing needed assistance to law enforcement's efforts to protect their communities. *Id.* The protection of public safety is a nonpunitive purpose, and the sex offender registration requirement is rationally related to that purpose. *See Smith*, 538 U.S. at 103; 123 S.Ct. at 1152; *Olivieri*, 779 So. 2d at 748.

D.D. also argues the registration requirement violates the Eighth Amendment by impermissibly extending the juvenile court's jurisdiction into the offender's adult life. When combined with the public disclosure of the adjudication, D.D. contends this "life sentence" conflicts with the juvenile justice system's goal of rehabilitating youthful offenders. This argument fails to give due regard for the legislature's role in the juvenile justice system.

While the Louisiana Constitution recognizes juvenile courts, it expressly provides the courts "shall have jurisdiction as provided by law." *See* La. Const. art.

10

V, §18.  Similarly, for persons who commit a crime under the age of seventeen, the legislature is charged with providing "special juvenile procedures" for the offender's adjudication and detention.  *See* La. Const. art. V, § 19.  The legislature, by two-thirds vote, can further require some juvenile offenders be tried as an adult for certain offenses, can lower the maximum age of persons subject to juvenile procedures, and even waive juvenile procedures in individual cases.  *Id.*  Within these parameters, the jurisdiction, procedures, and objectives of the juvenile justice system are all defined by the legislature.  *See* La. Const. art. V, §§18-19; *see also* La. Child. Code arts. 101-02, 302-13, 407, 412, 801-804, 879, 898.

In 1997, by a combined vote of 139-0, the legislature imposed the sex offender registration requirement on juveniles who commit designated sex offenses.  *See* 1997 La. Acts. 928; Bill History, 1997 Reg. Sess., SB1362.  More recently, in 2010, the legislature voted 127-0 to amend the Children's Code to prescribe a form for notifying the juvenile of this obligation.  *See* La. Child. Code art. 884.1A(2); 2010 La. Acts 594.  Any argument that mandatory registration violates the Eighth Amendment because it conflicts with the purpose or jurisdiction of the juvenile justice system must yield to the legal reality that the system's purpose and jurisdiction are defined by the legislature, the same entity that imposed the registration requirement.  *See* La. Const. art. V, §§18-19.  That deliberative body, not this court, is constitutionally charged with declaring the scope and purpose of the juvenile justice system.  *Id*.

We recognize juveniles are developmentally different from adults, and an offender's age and crime may affect an Eighth Amendment analysis. *See Miller v. Alabama*, 567 U.S. 460, 474; 132 S.Ct. 2455, 2466; 183 L.Ed.2d 407 (2012); *Graham v. Florida*, 560 U.S. 48; 130 S.Ct. 2011, 2026; 176 L.Ed.2d 825 (2010), *as modified* (July 6, 2010).  However, *Miller* and *Graham* wrestled with the Eight Amendment implications created by mandatory sentences incarcerating juveniles for

11

life, an "especially harsh punishment" that the Court described as the "ultimate penalty for juveniles . . . akin to the death penalty." *Miller*, 567 U.S. at 474; 132 S.Ct. at 2466; *Graham*, 560 U.S. at 70; 130 S.Ct. at 2028.

In contrast, Louisiana's sex offender registration law involves no incarceration whatsoever. And its scheme or purpose, as discussed above, has consistently been found not to involve punishment. It is a regulatory requirement intended to facilitate the exchange of information to assist law enforcement in protecting public safety and increase public awareness. *See* n.1. Nevertheless, the legislature made significant accommodations for juveniles, exempting them from most community notification requirements and providing an opportunity for a reduction in the registration period for those subject to a lifetime registration requirement. *See* La. R.S. 15:542.1C and 544E(2). Louisiana's sex offender registration law is not "akin to the death penalty" for juveniles and does not subject them to a lifetime of incarceration. The concerns of *Miller* and *Graham* are not applicable.

Whether applied to adults or juveniles, the registration requirement serves the "avowedly nonpunitive" purpose of protecting public safety thorough timely dissemination of information. *See* La. R.S. 15:540; *Cook*, 226 So. 3d at 392; *I.C.S.*, 145 So. 3d at 355-56; *Olivieri*, 779 So. 2d at 747. Any punitive aspects of the registration requirement are incidental, and not sufficient to constitute "the clearest proof necessary to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *See Trosclair*, 89 So. 3d at 357; *Olivieri*, 779 So. 2d at 749. D.D.'s constitutional challenge to Louisiana Revised Statute 15:542 based on the Eighth Amendment has no merit.[3]

---

[3] *See also State v. Domingo-Cornelio*, 26 Wash.App.2d 187, 198; 527 P.3d 1188, 1194 (2023), *review denied,* 534 P.3d 802 (Wash. 2023) ("The sex offender registration requirement for juveniles is not punitive and, therefore, is not unconstitutional under the Eighth Amendment."); *State v. N.R.*, 314 Kan. 98, 112; 495 P.3d 16 (2021) (Kansas) (Lifetime registration requirements are not punishment as applied to juvenile and do not violate Eighth Amendment.); *In Interest of Justin B.*, 419 S.C. 575, 586; 799 S.E.2d 675, 681 (2017) (South Carolina) (Requiring a juvenile

12

*Sixth Amendment Claim*

In his Sixth Amendment claim, D.D. contends the registration requirement implicates his Sixth Amendment right to a jury trial.

The Louisiana Children's Code grants juveniles all constitutional rights guaranteed to criminal defendants except the right to a jury trial. *See* La. Child. Code arts. 808, 882; *State ex rel. D.J.*, 01-2149 (La. 5/14/02), 817 So. 2d 26, 28. Because of fundamental differences between the adult and juvenile systems, due process does not require every constitutional right guaranteed to adults be automatically granted to juveniles. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 543; 91 S.Ct. 1976, 1985; 29 L.Ed.2d 647; *In re C.B.*, 708 So. 2d at 397. The standard in juvenile proceedings is the fundamental fairness required by the Due Process Clause. *Id.*

Applying that standard, the Supreme Court and this court have held fundamental fairness does not require a trial by jury in juvenile proceedings. *See McKeiver*, 403 U.S. at 545; 91 S.Ct. at 1986; *In re State ex rel. A.J.*, 09-0477 (La. 12/1/09), 27 So. 3d 247, 263; *State ex rel. D.J.*, 01-2149 (La. 5/14/02), 817 So. 2d

_____

to register as a sex offender "is not a punitive measure and . . . bears a rational relationship to the Legislature's purpose . . . to protect our citizens . . . from repeat sex offenders."); *State v. Boche*, 294 Neb. 912, 923; 885 N.W.2d 523, 532 (2016) (Nebraska) ("Because we conclude the lifetime registration requirements imposed on [a juvenile] are not punishment, [the] argument that these registration requirements amount to cruel and unusual punishment must necessarily fail."); *State v. Eighth Jud. Dist. Ct. (Logan D.)*, 129 Nev. 492, 512; 306 P.3d 369, 383 (2013) (Nevada) (Party convicted as a juvenile and later required to register "failed to demonstrate, by the clearest proof, that [amendment's] effect negates the Legislature's intent to create a civil regulatory scheme."); *People ex rel. Birkett v. Konetski*, 233 Ill.2d 185, 203; 909 N.E.2d 783, 797 (2009) (Illinois) ("This court has repeatedly held, though, that the Act's requirements do not constitute punishment."); *In re D.L.*, 160 S.W.3d 155, 162 (Tex. App. 2005) (Registration requirement as applied to juvenile is nonpunitive and cannot constitute cruel and unusual punishment.); *United States v. Under Seal*, 709 F.3d 257, 266 (4th Cir. 2013) (Federal act's registration requirements, as applied to juvenile, does not violate Eighth Amendment.); *United States v. Juvenile Male*, 670 F.3d 999, 1010 (9th Cir. 2012) (Registration under federal act may expose juveniles to potential shame and humiliation but does not meet the high standard of cruel and unusual punishment.).

26, 32; *State in Interest of Dino*, 359 So.2d 586, 598 (La.1978), *overruled on other grounds by State v. Fernandez*, 96-2719 (La. 4/14/98), 712 So. 2d 485. This conclusion rests on the differences between the "non-criminal" nature of juvenile proceedings and purely criminal proceedings for adults, including the great disparity between juvenile dispositions and adult sentences, the juvenile court's flexibility in the adjudication and disposition, and the juvenile system's focus on rehabilitation and individual treatment rather than punishment. *See McKeiver*, 403 U.S. at 545-47; 91 S.Ct. at 1986-87; *In re State ex rel. A.J.*, 27 So. 3d at 258, 260; *State v. Brown*, 03-2788 (La. 7/6/04), 879 So. 2d at 1288; *In re C.B.*, 708 So. 2d at 396-97. As explained by the Supreme Court:

> The imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the fact-finding function, and would, contrarily, provide an attrition of the juvenile court's assumed ability to function in a unique manner.
>
>        \*  \*  \*
>
> If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it.

*McKeiver*, 403 U.S. 547-551;91 S.Ct. at 1987-89.

Although this principle is well established, our jurisprudence has recognized exceptions when particular legislation "blurred the distinction" between the juvenile and adult systems to such a degree that fundamental fairness required a jury trial. *See Brown*, 879 So. 2d at 1290 (finding unconstitutional a law that allowed a juvenile disposition, rendered without a jury, to enhance a sentence under the habitual offender law for an adult conviction); *In re C.B.*, 708 So. 2d at 396 (striking down law authorizing the transfer of juvenile offenders to adult facilities at age seventeen). In those cases, the targeted law either extended or significantly changed the

14

conditions of the offender's incarceration. Here, as previously explained, the sex offender registration requirement involves no terms of incarceration.[4]

This court has reviewed other changes to the Children's Code, including the 1994 amendment to Article 407 that opened crime-of-violence proceedings to the public, and found the fundamental distinctions between the juvenile and adult systems remain. *See In re A.J.*, 27 So. 3d at 260-63 ("[C]hallenges, like the instant one, claiming that fundamental changes in the nature of the juvenile justice system have undermined the validity of the *McKeiver* Court's analysis have been routinely rejected."); *State ex rel. D.J.*, 817 So. 2d at 32-34 ("[T]rial by jury in a juvenile proceeding is not constitutionally required under the applicable due process standard."). Despite legislative changes to the juvenile justice system, "there remains a great disparity in the severity of penalties faced by a juvenile charged with delinquency and an adult defendant charged with the same crime." *State ex rel. D.J.*, 817 So. 2d at 33. This case demonstrates that disparity. As a juvenile, D.D.'s maximum confinement from his adjudication is five years, which the juvenile court can shorten or terminate at any time. *See* La. Child. Code arts. 898, 909. If tried and convicted as an adult, D.D. would have faced a forty-year sentence at hard labor. *See* La. R.S. 14:42.1B. And while not challenged here, the modification of the notice requirements significantly mitigates the effects of registration for juveniles in contrast to adults.

Louisiana's sex offender registration requirement, when applied to a juvenile, does not affect the fundamental distinctions between our juvenile and adult justice systems. The law does not change the duration or conditions of the juvenile's confinement, nor does it restrict the juvenile court's flexibility to modify the

---

[4] We recognize the failure to register when required by law is a crime punishable by a fine and imprisonment. *See* La. R.S. 15:542.1.4A. However, at issue here, is the effect of compliance with the registration process, not noncompliance. The failure to comply with the Act is a separate and distinct crime from the underlying sex offense that triggered the registration requirement. *See Olivieri*, 779 So. 2d at 748.

confinement order. The Act is a regulatory measure that makes substantial accommodations for juveniles. Fundamental fairness does not require a jury trial for a juvenile offender subject to the sex offender registration requirement. *See McKeiver*, 403 U.S. at 545; 91 S.Ct. at 1986; *In re A.J.*, 27 So. 3d at 263; *State ex rel. D.J.*, 817 So. 2d at 32; *Dino*, 359 So. 2d at 598.[5]

## CONCLUSION

Louisiana's sex offender registration requirement, as applied to a juvenile, does not violate the Eighth Amendment's prohibition against cruel and unusual punishment or implicate the Sixth Amendment's right to a jury trial. We affirm D.D.'s adjudication and the denial of his motion to declare Louisiana Revised Statute 15:542 unconstitutional.

**AFFIRMED.**

---

[5] *See also State v. Eighth Jud. Dist. Ct. (Logan D.)*, 129 Nev. 492, 520; 306 P.3d 369, 388 (2013) (Nevada) (finding no right to jury trial because subjecting juvenile sex offenders to registration "does not eliminate the many differences between the juvenile and adult justice systems"); *United States v. Juvenile Male*, 670 F.3d 999, 1014 (9th Cir. 2012) (finding no right to jury trial because registration requirement "does not necessarily eradicate all differences between the adult and juvenile processes and transform the latter into a 'criminal' proceeding"); *In re Jonathon C.B.*, 958 N.E.2d 227, 249 (Ill. 2011), *as modified on denial of reh'g* (Nov. 28, 2011) (finding no right to jury trial because amendments to juvenile justice act, which included sex offender registration, did not render delinquency adjudications equivalent to felony convictions); *People ex rel. Birkett v. Konetski*, 233 Ill.2d 185, 203; 909 N.E.2d 783, 797 (2009) (Illinois) (rejecting claim of right to jury trial because registration requirements "do not constitute punishment"); *In Matter of C.C.F.*, C3-97-552, 1997 WL 714701, at *1 (Minn. Ct. App. Nov. 18, 1997) ("This court, however, has held that applying the registration statute to a juvenile offender does not violate due process.")

# SUPREME COURT OF LOUISIANA

### No. 2024-CK-00254

### STATE OF LOUISIANA IN THE INTEREST OF D. D.

*On Writ of Certiorari to the Court of Appeal, First Circuit,*
*Parish of St. Tammany*

**WEIMER, C.J.**, additionally concurring.

In the instant case, a 14-year-old juvenile defendant was charged with and adjudicated of second degree rape stemming from a December 27, 2021 forcible sexual encounter with his 13-year-old girlfriend. The incident was reported for the first time approximately six months later by the victim to a female camp counselor. Defendant, who was still a juvenile, was tried as a juvenile in juvenile court.

Under these circumstances, the "[r]egistration of sex offenders and child predators" is governed by La. R.S. 15:542(A)(3)(b), which provides:

> The following persons shall be required to register and provide notification as a sex offender or child predator in accordance with the provisions of this Chapter:
>
> . . . .
>
> (3) Any juvenile, who has attained the age of fourteen years at the time of commission of the offense, who has been adjudicated delinquent based upon the perpetration, attempted perpetration, or conspiracy to commit any of the following offenses:
>
> . . . .

(b) Forcible or second degree rape (R.S. 14:42.1).

I again emphasize that Louisiana's sex offender registry is remedial and was designed for the laudable purpose of protecting the public. **State v. I.C.S.**, 13-1023, p. 9 (La. 7/1/14), 145 So.3d 350, 362 (citing La. R.S. 15:540) (Weimer, J., dissenting). However, as the restrictions placed on sex offenders are enhanced, such restrictions

begin to become precipitously close to being criminal in nature and, thus, punitive, requiring a different level of review.

In La. R.S. 15:542(A)(3)(b), the legislature has clearly evidenced intent to have a juvenile second degree rape offender, who has attained the age of 14, register as a sex offender. For these reasons, I agree with the majority's finding that defendant, although a juvenile at the time of the offense, must register as a sex offender.

I write separately to distinguish my dissenting opinion in **I.C.S.**, which involved 2011 charges of aggravated rape and indecent behavior with a juvenile that occurred in 2004 when the defendants were 12 and 13 years old. *Id.*, 13-1023 at 2, 145 So.3d at 351. In **I.C.S.**, the defendants, then 20 and 21 years old and being prosecuted in adult criminal court, pled guilty to indecent behavior with a juvenile. *Id.*, 13-1023 at 2, 145 So.3d at 351-52. Because the defendants, who were juveniles when the sex offenses occurred, were adults at the time of their guilty plea to a sex offense for which registration is required for an adult, the majority of this court found that the defendants were required by La. R.S. 15:542(A)(1)(a) to register as sex offenders. *Id.*, 13-1023 at 6, 145 So.3d at 353-54.

I disagreed with this holding, finding it to be problematic in that "persons who were never statutorily-required to register at the time of their juvenile offense are now being required to register because they pled guilty after their eighteenth birthday." **I.C.S.**, 13-1023 at 9, 145 So.3d at 362 (Weimer, J., dissenting). I observed that "[a]n analysis of all relevant statutory provisions, as opposed to singling out one provision, demonstrates the legislature's intent not to impose adult consequences for certain acts when committed as a juvenile." See *id.*, 13-1023 at 1, 145 So.3d at 357 (Weimer, J., dissenting). The legislature's omission of the offense of indecent acts with a juvenile in the list of offenses in La. R.S. 15:542(A)(2) and (3) evidences "a legislative intent

2

not to require registration for such an offense." *Id.*, 13-1023 at 5, 145 So.3d at 360. By finding that the juvenile offenders in **I.C.S.** were required to register as sex offenders under La. R.S. 15:542(A)(1), I believe that the majority "ignore[d] the lines of separation the legislature has drawn between offenses committed as a juvenile and as an adult." *Id.*, 13-1023 at 9, 145 So.3d at 362 (Weimer, J., dissenting).

As to the offense at issue in this case, the legislature's inclusion of second degree rape by a juvenile, who has attained the age of 14 years, in the list of offenses in La. R.S. 15:542(A)(3) evidences its intent that the offense merits protection of the public in the form of registering as a sex offender. Thus, for second degree rape, when committed as a juvenile, who is at least 14 years old, there are differences between juvenile and adult consequences regarding registration as a sex offender. For these reasons, I agree with the decision addressing the registration issue in this case.

**SUPREME COURT OF LOUISIANA**

**No. 2024-CK-00254**

**STATE OF LOUISIANA IN THE INTEREST OF D.D.**

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of St. Tammany

**HUGHES, J., dissenting.**

Registration is not punishment like gaming is not gambling, especially in the context of a juvenile offender.

# SUPREME COURT OF LOUISIANA

## No. 2024-CK-00254

## STATE OF LOUISIANA IN THE INTEREST OF D.D.

On Writ of Certiorari to the Court of Appeal, First Circuit, Parish of St. Tammany

**GUIDRY, J.,** dissents and assigns reasons.

I disagree with the majority's conclusion that lifetime sex offender registration for juvenile offenders does not constitute punishment for purposes of the Eighth Amendment. Central to the Constitution's prohibition against cruel and unusual punishment is the precept of justice that "punishment for crime should be graduated and proportioned to [the] offense." *See Weems v. United States*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed.793 (1910). The proportionality precept is particularly relevant here, where a lifetime penalty is applied to juvenile crime. Such a penalty is excessive in my view.[1] Thus, despite this court's conclusion to the contrary, I would find that the punitive effects of La. R.S. 15:542, as applied to juveniles, greatly outweigh its nonpunitive purposes. I would further find the effects of the statute transform what may have been meant to be a civil remedy into a punitive one, even if the legislature did not intend it to be so. *See Smith v. Doe*, 538 U.S. 84, 92, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003).[2]

---

[1] Based on the non-exhaustive factors established in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), the consideration of which determines whether an intended civil remedy has a punitive effect, I would find that lifetime sex offender registration for juveniles is excessive in light of its nonpunitive purposes, especially given the growing body of research showing that youth who commit sexual offenses in childhood are unlikely to commit a subsequent sex offense. *See* https://www.americanbar.org/groups/litigation/resources/newsletters/childrens-rights/five-facts-about-juvenile-sex-offender-registration. I would also find that lifetime sex offender registration for juveniles resembles traditional shame-based punishments and promotes the traditional aims of punishment.

[2] To assess whether a statute is punitive, courts look to the two-part test in *Smith*, 538 U.S. at 92, 123 S.Ct. 1140: If the intention of the legislature was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, we must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil. Additionally, in determining whether a punishment is cruel and unusual, the court must consider whether there is a national consensus against the sentencing

Importantly, the magnitude of punishment inflicted through lifetime sex offender registration is disproportionate to the comparatively diminished culpability of the juvenile offender. As the Supreme Court has emphasized, juveniles have lesser culpability and greater capacity for reform than adult offenders. *See Miller v. Alabama*, 567 U.S. 460, 471, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012); *Graham v. Florida*, 560 U.S. 48, 72-73, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010); *Roper v. Simmons*, 543 U.S. 551, 570-571, 125 S.Ct. 1183, 161 L.Ed. 2d (2005). A greater possibility exists that a minor's character deficiencies will be reformed. *Roper*, 543 U.S. at 570, 125 S.Ct. 1183. And *Roper* and *Graham*, establishing that juveniles have lessened culpability, note that such a culpability makes juveniles less deserving of the most severe punishments.[3] *Graham*, 560 U.S. 68, 130 S.Ct. 2011; *Roper*, 543 U.S. at 569, 125 S.Ct. 1183.

The lifetime penalty runs afoul of the goals of rehabilitating the juvenile offender and aiding in his development. In addition, the lifetime penalty essentially renders good behavior and character improvement immaterial. *See Graham*, 540 U.S. at 70, 130 S.Ct. 2011. An offender will be hampered in his education, relationships, and work life long after his release from juvenile confinement. He will encounter difficulties into his adulthood—at least until he is age 46, when it may then be too late to make a fresh start. In the most significant years of his adult life, he will have a constant cloud hovering, anchoring him to his crime as a minor.

---

practice at issue and whether the severity of the punishment in question is disproportionate to the culpability of the offenders at issue in light of their crimes and characteristics. *Graham v. Florida*, 560 U.S. 48, 67, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). We also assess whether the sentencing practice serves legitimate penological goals. *Graham*, 560 U.S. at 67-68, 130 S.Ct. 2011.

I note, as of this writing, the U.S. Department of Justice reports that only 18 states are in substantial compliance with the Sex Offender Registration and Notification Act (SORNA). *See* https://smart.ojp.gov/sorna/substantially-implemented#:~:text=159%20jurisdictions%20(18%20states%2C%20137,have%20substantially%20implemented%20SORNA's%20requirements.

[3] *Roper* and *Graham* address the most severe punishments, lifetime incarceration and the death penalty. Nevertheless, I find the cases instructive here, as lifetime sex offender registration is a severe punishment with severe consequences.

2

Although open to review after 25 years, lifetime sex offender registration for juvenile offenders defines a minor's adult life well before it has a chance to start. For this reason, I find the punishment especially harsh.  The *Graham* court opined on a "meaningful opportunity" to obtain release based on demonstrated maturity and rehabilitation.  *See Graham*, 560 U.S. at 75, 130 S.Ct. at 2011.  I do not find that such an opportunity exists here.  Therefore, I respectfully dissent.